949 F.2d 695
 Jose ROLO, Rosa Rolo, Dr. William Tenerelli, Appellants,
v.
GENERAL DEVELOPMENT CORPORATION, GDV Financial, Inc., David
F. Brown, Robert F. Ehrling, the Home Insurance Company, the
Federal Mortgage Loan Association, the Federal Home Loan
Mortgage Association, Carteret Mortgage Corp., the Citizens
and Southern National Bank, Southeast Bank, N.A., Citizens
and Southern Trust Company (Florida) National Association,
Ambase Corporation, Chase Federal Savings & Loan
Association, Secor National Bank, Capital Bank, John Does,
1-15, City Investing Company Liquidating Trust, Carteret
Bancorp, Inc., Carteret Savings Bank, FA, George T.
Scharffenberger, Marshall Manley, Edwin I. Hatch, Eben W.
Pyne, Reubin O'D. Askew, Howard L. Clark, Jr., Charles J.
Simons, Peter R. Brinckerhoff, Cravath, Swaine, David G.
Ormsby, Painewebber Incorporated, Merrill, Lynch, Pierce,
Fenner & Smith, Incorporated, the Prudential Insurance
Company of America, National Bank of Canada, Citicorp Real
Estate, Inc., First National Bank of Boston, Federal
National Mortgage Association, Chase Federal Bank, FSB,
Secor Bank, FSB, Oxford First Corp., the Oxford Finance
Companies, Inc., Stanchart Business Credit, Inc., Harbor
Federal Savings and Loan Association, Greyhound Financial
Corporation, Lloyds Bank PLC, John Does 1-10.
Jose ROLO, Rosa Rolo, Dr. William Tenerelli, Petitioners,
v.
GENERAL DEVELOPMENT CORPORATION, GDV Financial, Inc., David
F. Brown, Robert F. Ehrling, the Home Insurance Company, the
Federal Mortgage Loan Association, the Federal Home Loan
Mortgage Association, Carteret Mortgage Corp., the Citizens
and Southern National Bank, Southeast Bank, N.A., Citizens
and Southern Trust Company (Florida) National Association,
Ambase Corporation, Chase Federal Savings & Loan
Association, Secor National Bank, Capital Bank, John Does,
1-15, Respondents.
Honorable Harold A. Ackerman, United States District Judge,
Nominal Respondent.
 Nos. 91-5451, 91-5458.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 5, 1991.
Decided Nov. 27, 1991.
 
 Herbert I. Deutsch, Roy A. Heimlich (argued), Alfred N. Metz, Deutsch and Frey, New York City, Glenn P. Callahan, Callahan, Delany & O'Brien, Cherry Hill, N.J., for Jose Rolo, Rosa Rolo and William Tenerelli.
 Paul M. Dodyk (argued), Cravath, Swaine & Moore, New York City, Matthew P. Boylan, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for Ambase Corp. and City Investing Co. Liquidating Trust.
 Before STAPLETON, GREENBERG, and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Appellants, Jose and Rosa Rolo and Dr. William Tenerelli ("the Rolos"), seek relief from two orders of the district court. The first order stayed the Rolos's class action damage suit pending bankruptcy and criminal proceedings which involve some of the defendants. The Rolos seek review of this order by direct appeal pursuant to 28 U.S.C. § 1291 or, alternatively, by a petition for a writ of mandamus pursuant to 28 U.S.C. § 1651. The second order, of which the Rolos seek review by direct appeal, stayed the Rolos's application for a preliminary injunction to enjoin two of the defendants from liquidating and distributing their assets in an alleged effort to render themselves judgment proof. The appellees have moved to dismiss the appeal on the ground that this court lacks jurisdiction.
 
 
 2
 We conclude that this court does not have appellate jurisdiction over the first order and that that order does not constitute the kind of extraordinary action on the part of the district court that would warrant issuance of a writ of mandamus. We hold further that because the district court's second order effectively denied the Rolos's application for a preliminary injunction, that order is appealable under 28 U.S.C. § 1292(a)(1). Finally, we conclude that the district court abused its discretion in refusing to reach the merits of the Rolos's preliminary injunction application. Accordingly, we will vacate the district court's second order and remand this case so that the district court can consider the merits of that application.
 
 I.
 
 3
 The underlying dispute in this case grows out of the affairs of the General Development Corporation ("GDC") and GDV Financial ("GDV"). The present case is but one of a series of related cases involving these two companies.
 
 A. The District of New Jersey Cases
 
 4
 In August 1989, the Rolos filed an action in the United States District Court for the District of New Jersey, alleging that GDC and GDV had engaged in a fraudulent marketing scheme to sell certain real estate lots in violation of several federal civil and criminal statutes. See Rolo v. General Development Corp., Civ. Action No. 89-3373 (D.N.J.1989) ("Rolo I "). In April 1990, GDC and GDV filed bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Florida. Shortly thereafter, the district court administratively terminated Rolo I.
 
 
 5
 The Rolos filed the present action ("Rolo II ") in November 1990. As in Rolo I, the Rolos allege in this suit that the defendants participated in a fraudulent marketing scheme in violation of several federal criminal and civil statutes.[1] Rolo II differs from Rolo I, however, in three respects. First, unlike Rolo I, Rolo II is a class action brought on behalf of the North Port Out-of-State Lot Owners Association ("NPA"), a group comprised of more than 5,000 individuals who purchased property from GDC and its agents. Second, in addition to GDC and GDV, Rolo II 's defendants include two former GDC executives, David Brown and Robert Ehrling; two companies related to GDC, Ambase Corporation ("Ambase") and City Investment Company Liquidating Trust ("City Investment"); and various financial lending institutions which purchased mortgages from GDV on the secondary market. The Rolos contend that these additional defendants knew or should have known of the fraudulent schemes perpetrated by GDC and failed to take adequate steps to expose or end them. Third, although the Rolos listed GDC and GDV as defendants in this suit, they did not serve either company with a copy of the summons or complaint. The Rolos subsequently asserted before the district court their intention "to delete all references to GDC and GDV as defendants." Rolo, et al. v. General Dev. Corp., Civ. Action No. 90-4420, slip op. at 15 (D.N.J. filed April 26, 1990) (emphasis in the original). Accordingly, like the district court, we will treat neither GDC nor GDV as defendants in this action.
 
 B. The Bankruptcy Proceedings
 
 6
 As noted, GDC and GDV filed bankruptcy petitions shortly after the initiation of Rolo I and prior to Rolo II. Approximately two weeks after the Rolos filed this class action they filed with the bankruptcy court a proof of claim on behalf of all NPA members. The Rolos stated as the bases of their claim the allegations set forth in the Rolo II complaint, which they attached to their proof of claim. They further estimated that the combined claims of NPA members exceeded $400,000,000.
 
 
 7
 At a subsequent hearing before the district court, the Rolos informed the court of their intention "to pursue an adversarial proceeding in Bankruptcy Court during which they [would] seek to reorder the priority of claim distribution." Slip op. at 15. The district court also learned that "at the appropriate time GDC intend[ed] to object to the [Rolos's] proof of claim on both procedural and substantive grounds." Id. at 15-16. At the time of the district court's decision, neither proceeding had occurred.
 
 
 8
 C. The Criminal Cases Against GDC, GDV, And Its Officers
 
 
 9
 In March 1990, a grand jury in the United States District Court for the Southern District of Florida returned an indictment against GDC, GDV, and GDC executives, David Brown and Robert Ehrling, for violations of 18 U.S.C. § 1341 (1988) and related federal statutes. The indictment alleged that the defendants had engaged in a fraudulent scheme to sell houses to unsuspecting consumers at prices well in excess of their fair market value. Pursuant to a plea agreement reached between the government, GDC, and GDV, GDC pleaded guilty to one count of conspiracy to commit mail fraud in return for the dismissal of the remaining counts against GDC and GDV.
 
 
 10
 As an additional condition of the plea arrangement, GDC agreed to enter into a consent decree which requires GDC to pay up to $160,000,000 in restitution to customers who purchased GDC homes between January 1, 1983 and January 1, 1990. The restitution program is to be "implemented through and, if necessary, limited by the bankruptcy reorganization plan." Slip op. at 17. Its purpose is to "provide qualified GDC home buyers with the difference between the purchase price of their house and its fair market value at the time it was acquired." Id. A consultant for the bankruptcy court concluded, however, that the program's beneficiaries could expect to recover no more than 37 percent of this figure. Id.
 
 
 11
 Pursuant to the consent decree, a purchaser's participation in the restitution program bars her from bringing any federal or state claim she may have against GDC, its parents, subsidiaries, or affiliates. Additionally, participants waive any right they may have to sue any of the present or former officers, directors, agents, or employees of these entities, including David Brown and Robert Ehrling. Participation in the program, however, does not waive or extinguish any claim a purchaser may have against a financial institution which acquired the homeowner's GDV mortgage. Nor does it prejudice any claim a buyer may have under a director or officer indemnification policy.
 
 
 12
 One month after GDC and GDV entered their plea agreement, the grand jury returned a superseding indictment against Brown and Ehrling and two additional GDC officers. Like the original indictment, this one charged the defendants with engaging in a fraudulent scheme to sell homes at prices well above their fair market value in violation of various federal statutes. The four defendants were scheduled to go to trial in October 1991.
 
 D. The Stay Orders
 
 13
 In December 1990, the district court stayed this action pending the disposition of GDC's and GDV's bankruptcy proceedings ("the December Order"), "without prejudice to the right of the parties to reopen the proceedings for good cause shown ... or for any other purpose required to obtain a final determination of the litigation." The Rolos then moved for reconsideration of the December Order and for a preliminary injunction barring Ambase and City Investment from liquidating and distributing their assets in, what the Rolos characterized as, an attempt to render the two companies judgment proof. In April 1991, the district court denied reconsideration of the December Order and further directed that the action be stayed on the terms set forth in the December Order pending the resolution of the criminal cases against Brown and Ehrling in addition to the bankruptcy proceedings ("the April Order"). In May 1991, the district court stayed the Rolos's application for a preliminary injunction "in accordance with the provisions set forth in [the April Order]" (the "May Order").
 
 
 14
 The district court justified its decision to stay the Rolos's action in part on the need to conserve judicial resources and to avoid inconsistent judgments. The court noted that because the defendants' culpability, if any, would be limited to their knowledge of, and subsequent passive participation in, the acts of GDC and GDV, a judgment against them would necessarily entail a determination that GDC and GDV committed fraud. That determination, however, would not be binding against GDC and GDV since they are not parties to this action. Thus, if this case continued and a judgment was rendered in favor of the Rolos, the bankruptcy court would essentially be required to relitigate whether GDC and GDV committed fraud since the defendants would in all likelihood make various claims for indemnification and contribution against GDC and GDV, who presumably would contest those claims. Moreover, if the bankruptcy court determined that GDC and GDV did not commit any fraudulent acts, then the defendants would be faced with an inconsistent judgment, the result of which would extinguish their claims for indemnification and contribution. In the district court's view, "[t]his predicament would be manifestly unjust and should be avoided where possible...." Slip op. at 14.
 
 
 15
 The district court also reasoned that the related criminal proceedings against Brown and Ehrling justified a stay of the present action. It noted the "possib[ility], if not probab[ility], that both Brown and Ehrling would choose to exercise their fifth amendment rights in this case for the duration of their criminal trial." Given the personal involvement of Brown and Ehrling in many of the activities at issue in this case, the district court concluded that "their assertion of the[se] rights could only prejudice the interests of the other defendants." The court noted further that continuation of this case "would force Brown and Ehrling to fight on two fronts at the same time." Slip op. at 15.
 
 
 16
 Finally, the district court identified several additional benefits that would result from a stay order. Specifically, the court noted that completion of the bankruptcy proceeding and the criminal trial might "reduce the amount of discovery required in this action, ... narrow the scope of the unresolved issues and avoid duplication of efforts. Put simply, the stay would conserve everyone's resources...." Slip. op. at 15.
 
 
 17
 The Rolos seek review of the April and May Orders.
 
 II.
 
 18
 The Rolos first claim that this court has jurisdiction over their appeal from the April Order pursuant to § 1291[2] under the collateral-order doctrine announced in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In order to qualify as final under that doctrine, an order must meet a three-part test:
 
 
 19
 First, the order must "conclusively determine the disputed question." Second, the order must "resolve an important issue completely separate from the merits of the action." Third and finally, the order must be "effectively unreviewable on appeal from a final judgment."
 
 
 20
 Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276, 108 S.Ct. 1133, 1136-37, 99 L.Ed.2d 296 (1988) (citations omitted). If the order in question fails to satisfy any one of these requirements, it is not appealable under the collateral-order doctrine. Id. Moreover, "the collateral-order doctrine has always been construed narrowly by this court, 'lest the exception swallow up the salutary general rule' that only final orders may be appealed." Praxis Properties, Inc. v. Colonial Savings Bank, 947 F.2d 49, 54 (3d Cir.1991).
 
 
 21
 The "without prejudice" language of the December Order, which remains in effect under the April Order, strongly suggests that the April Order did not "conclusively" determine that this litigation would remain at a halt until final disposition of the criminal and bankruptcy proceedings. The district court appears open to further applications from any party who has reason to believe the stay is having an effect unanticipated by the court by virtue of changed circumstances or otherwise. As a result, it is at least doubtful that the first prong of the Cohen doctrine test is satisfied here. However, even if the district court's decision had conclusively determined the order in which these related proceedings would go forward, we would not have jurisdiction to review it because it does not "resolve an important issue completely separate from the merits of the action."
 
 
 22
 The Supreme Court applied the Cohen doctrine in the context of a stay order in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In Moses H. Cone, the Court asserted appellate jurisdiction over a district court's order to stay federal proceedings brought to compel arbitration until the completion of parallel state proceedings. The Court held that because the "issue of arbitrability" was the only issue presented in the federal and state proceedings, a stay of the federal suit pending resolution of the state suit would render the state court's judgment res judicata and thereby terminate the federal suit. Id. at 12, 103 S.Ct. at 935. Because a stay order in this context "amounts to a refusal to adjudicate the merits," the Court concluded that appellate jurisdiction existed under the Cohen doctrine. Id. at 12, 103 S.Ct. at 935.
 
 
 23
 As this court recognized in Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1219 (3d Cir.1989), "Moses H. Cone establishes that a stay order that amounts to a refusal to adjudicate the merits resolves an important issue separate from the merits. In Moses H. Cone, the stay met this criteria because the state court's decision on the same issue would be res judicata." It does not follow, however, that an order which does no more than establish the timetable for litigating the merits of a controversy "resolve[s] an important issue completely separate from the merits of the action."
 
 
 24
 In Moses H. Cone, the Court noted that this second requirement of the Cohen doctrine "is a distillation of the principle that there should not be piecemeal review of 'steps toward final judgment in which they merge.' " 460 U.S. at 12, n. 13, 103 S.Ct. at 935, n. 13 (quoting from Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949)). The Court emphasized that in the case before it, "there [was] no step towards final judgment, but a refusal to proceed at all." Id. Here, by contrast, the April Order was but a "step towards final judgment;" there has been no refusal to proceed. While the issues may be narrowed as a result of the development of the record in the criminal and bankruptcy proceedings, the Rolos cannot claim that the resolutions of those matters will terminate the district court proceeding in this case; there will be further proceedings of substance in the district court after those matters are concluded. All that has happened is that the district court has entered an order setting a schedule for further proceedings before it--an order that for present purposes is indistinguishable from a myriad of other administrative orders necessary to regulate the proceedings before it. Moreover, as the above-quoted portions of the district court's opinion reflect, that order was premised on an analysis of the issues, evidence, and discovery involved in the three related proceedings--an analysis that necessarily entailed scrutiny of the merits of the controversy before the district court. See Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988) (denial of motion to dismiss on forum non conveniens grounds not separate from the merits because court must "scrutinize the substance of the dispute ... to evaluate what proof is required"). In comparable circumstances, we have held that we lacked appellate jurisdiction. Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1072 (3d Cir.1983) (absent extraordinary circumstances an order granting a stay is not appealable); Brace v. O'Neill, 567 F.2d 237, 244 n. 29a (3d Cir.1977) (same); Cotler v. Inter-County Orthopaedic Ass'n., P.A., 526 F.2d 537, 541 (3d Cir.1975) (order staying proceedings in district court pending resolution of a state court suit with an overlapping factual background was not appealable); Arny v. Philadelphia Transportation Co., 266 F.2d 869, 870 (3d Cir.1959).
 
 
 25
 We conclude that we have no jurisdiction under § 1291 to review the April Order.
 
 III.
 
 26
 The Rolos urge us in the alternative to exercise jurisdiction pursuant to our power to issue a writ of mandamus.[3] In order to show that they are entitled to the writ, the Rolos must satisfy a stringent standard. As the Supreme Court repeatedly has observed:
 
 
 27
 the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations.... [O]nly "exceptional circumstances amounting to a judicial 'usurpation of power' will justify issuance of the writ." ... Moreover, ... the party seeking mandamus has the "burden of showing that its right to issuance of the writ is 'clear and indisputable.' "
 
 
 28
 Gulfstream, 485 U.S. at 289, 108 S.Ct. at 1143 (citations omitted). This rigorous standard allows the courts of appeals to remedy egregious instances of judicial overreaching or misconduct, without allowing the writ to become a vehicle for interlocutory appeal of every issue in a case. See Gold, 723 F.2d at 1071 ("[w]hile a simple showing of error might be sufficient to obtain a reversal on a direct appeal, a writ of mandamus issued under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.' ") (quoting Will v. United States, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967)).
 
 
 29
 We think it apparent from what has thus far been said that this case involves no "exceptional circumstances amounting to a judicial 'usurpation of power.' " The district court, based on an analysis of the three related cases and a weighing of the competing interests involved, exercised its inherent power to control its docket so as to promote fair and efficient adjudication. Even if we disagreed with its ultimate conclusion, we could not say that a writ of mandamus is justified.[4]
 
 IV.
 
 30
 We turn next to the question of whether we have appellate jurisdiction pursuant to § 1292(a)(1) over the district court's May Order staying the Rolos's application for a preliminary injunction. Section 1292(a)(1) provides that the courts of appeals shall have jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions...." (Emphasis added.) Our jurisdiction pursuant to § 1292(a)(1) extends to the review of "orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.' " Gulfstream, 485 U.S. at 287-88, 108 S.Ct. at 1142-43 (emphasis added) (citing Carson v. American Brands, Inc., 450 U.S. 79, 83, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981)). As we noted in Cohen v. Board of Trustees, 867 F.2d 1455 (3d Cir.1989) (in banc), the label put on an order by the district court does not prevent us from treating it as an injunction for purposes of § 1292(a)(1). Id. at 1466 (citations omitted).
 
 
 31
 Although the May Order did not expressly "refuse" a preliminary injunction, it nonetheless had the practical effect of doing so. See 11 C. Wright & A. Miller Federal Practice and Procedure § 2962 at 614 (1973) ("when a court declines to make a formal ruling on a motion for a preliminary injunction, its refusal to issue a separate order will be treated as equivalent to the denial of a preliminary injunction and will be appealable."). See also Cedar Coal Co. v. United Mine Workers, 560 F.2d 1153, 1161-62 (4th Cir.1977), cert. denied, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); United States v. Lynd, 301 F.2d 818, 822 (5th Cir.), cert. denied, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125 (1962).
 
 
 32
 For an interlocutory order to be immediately appealable under § 1292(a)(1), however, the Rolos "must show more than that the order has the practical effect of refusing an injunction." Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). Unless they can demonstrate that the district court's order "might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectively challenged' only by an immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." Id.
 
 
 33
 In support of their motion for a preliminary injunction, the Rolos have tendered competent evidence, by way of sworn affidavits, tending to show that defendants Ambase and City Trust are currently liquidating and distributing their assets in an effort to render the companies judgment proof--a proposition which remains uncontradicted on the current record. In this context, we conclude that the May Order's deferral of consideration of the preliminary injunction application was an effective denial of that application and that, assuming the truth of the Rolos's allegations, that denial would impose "serious, perhaps irreparable" consequences on them. Accordingly, the district court's order refusing to reach the merits of the application for a preliminary injunction is appealable under § 1292(a)(1).[5]
 
 V.
 
 34
 We review a district court's denial of a preliminary injunction under an abuse of discretion standard. Loretangeli v. Critelli, 853 F.2d 186, 193 (3d Cir.1988). Contrary to defendants' assertions, the record does not reflect that the district court gave any consideration to the merits of the application for a preliminary injunction or formulated any view as to whether the Rolos will be irreparably injured if pendente lite relief is not granted. Accordingly, the issue before us is whether the district court abused its discretion when it deferred consideration of the preliminary injunction application for an indeterminate period in the face of affidavits tending to show that irreparable injury would occur in the interim and when it did so without considering whether that injury will in fact occur. Our answer is in the affirmative. If a district court decides to stay proceedings for an indeterminate period and a party has competent and specific evidence tending to show that it will be unable to secure effective relief when the stay is terminated, the party in such jeopardy, in the absence of extraordinary circumstances, is entitled to have a motion for pendente lite relief considered on its merits. It seems to us that, in the absence of such circumstances, a denial of that consideration is no less an abuse of discretion than it would be for a district court to deny a motion for a preliminary injunction without consideration of its merits on the ground that there will ultimately be a trial and the desirability of injunctive relief can be considered at that time on the basis of a fuller record.
 
 
 35
 The Rolos, of course, are not entitled to a preliminary injunction unless they make the requisite showing of a likelihood of success on the merits, irreparable injury, a favorable balance of hardships, and consistency with the public interest. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir.1990). Because the district court did not address the merits of the Rolos's application and the defendants have not formally responded to it, we will vacate the May Order and remand with instructions that the district court address the Rolos's motion for a preliminary injunction without delay.
 
 VI.
 
 36
 In summary, this court lacks appellate jurisdiction over the April Order staying the Rolos's class action pending resolution of the related bankruptcy and criminal proceedings. Moreover, we decline to issue a writ of mandamus concerning this matter.
 
 
 37
 We do have appellate jurisdiction over the district court's May Order staying the Rolos's application for a preliminary injunction. Having concluded that the district court abused its discretion in entering that order, we will vacate the district court's May Order and remand this case with instructions to entertain promptly the Rolos's motion for a preliminary injunction.
 
 
 
 [1]
 Specifically, the Rolos assert claims under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, and the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703(a), as well as common law fraud claims. The district court had jurisdiction over the statutory-based claims pursuant to 15 U.S.C. § 78aa, 18 U.S.C. § 1964, and 15 U.S.C. § 1719, and pendent jurisdiction over the common law fraud claims
 
 
 [2]
 Title 28 U.S.C. § 1291 provides that the federal courts of appeals shall generally have "jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court."
 
 
 [3]
 Title 28 U.S.C. § 1651(a) provides that "all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."
 
 
 [4]
 Cotler v. Inter-County Orthopaedic Ass'n., 526 F.2d 537 (3d Cir.1975) is entirely consistent with the conclusion we here reach on the mandamus issue. At issue in Cotler was a district court's order to stay a federal securities fraud action pending the resolution of state court proceedings. We held that the district court's orders deprived the plaintiff of a federal forum for a cause of action over which the jurisdiction of the federal courts is exclusive. Id. at 539. The orders therefore exceeded the court's lawful powers and justified issuance of a writ. Id. While the Rolos assert claims over which the federal courts have exclusive jurisdiction, they have not been "relegated to state court fact-finding" as were the plaintiff's claims in Cotler. Id. at 542
 
 
 [5]
 The defendants misread the dictum they rely upon from Cohen v. Board of Trustees, 867 F.2d at 1464. As we there stated, an order granting or denying a stay which does no more than postpone or accelerate resolution of an action seeking injunctive relief is not appealable under § 1292(a)(1) as a grant or denial of an injunction. The May Order in this case, however, does far more. Assuming the Rolos's allegations to be true, the district court's refusal to consider the application for a preliminary injunction effectively denied them the ultimate relief that they seek. As the court in Cohen spelled out at some length, "injunctions may be affirmatively defined as follows:
 'Orders that are directed to a party, enforceable by contempt, are designed to accord or "protect some or all of the substantive relief sought by a complaint" in more than a [temporary] fashion.' "
 Id. at 1465 (quoting Wright, Miller, Cooper & Gressman Federal Practice, 3922 at 29 (1977)). The Rolos here moved under Rule 65(a) for an order directed to a party, enforceable by contempt, and designed to protect the relief they sought. The district court's refusal to entertain that motion under the circumstances there alleged had precisely the same effect on the Rolos as would an order expressly denying that motion. Accordingly, our conclusion that we have jurisdiction under § 1292(a)(1) is consistent with the Cohen case.