## The HERTZ CORPORATION, Plaintiff,

v.

## THE GATOR CORPORATION, Defendant.

### No. CIV. 03–444(WGB).

United States District Court, D. New Jersey.

March 13, 2003.

---

Riker, Danzig, Scherer, Hyland & Perretti LLP, by Glenn A. Clark, Eric Blu-

menfeld, Morristown, NJ, Patterson, Belknap, Webb & Tyler, LLP, by Thomas C. Morrison, Kieran M. Corcoran and Diane L. Millar, New York City, for Plaintiff.

Tompkins, McGuire, Wachenfeld & Barry, LLP, by William H. Trousdale, Thomas F. Doherty, Newark, NJ, Baker Botts LLP, by Russell H. Falconer, Steven R. Gustavson, New York City, Sheppard, Mullin, Richter & Hampton, LLP, by Kent R. Raygor, Los Angeles, CA, and L. Scott Primak, The Gator Corporation, Redwood City, CA, for Defendant.

## OPINION

BASSLER, District Judge.

The defendant The Gator Corporation ("TGC") seeks a stay of the proceedings in this action, including plaintiff Hertz Corporation's ("Hertz") earlier-filed motion for a preliminary injunction against TGC, until the Judicial Panel on Multidistrict Litigation ("MDL Panel") hears and decides TGC's motion for consolidation of several suits involving similar issues. At a February 17, 2003 telephonic status conference, the Court decided to hear TGC's stay motion before Hertz's preliminary injunction motion. Having held oral argument on March 10, 2003 and considered the parties' briefs, the Court grants TGC's motion to stay.

### I. Factual & Procedural Background

This short discussion of the facts, though providing background for the Court's analysis of this motion, does not constitute the Court's findings of fact for any purpose other than this motion.

The Hertz Corporation, a Delaware corporation with its principal place of business in New Jersey, is a car rental company that maintains a website on the World

Wide Web, "www.hertz.com". According to Hertz, the website is an integral part of its business because an increasingly significant portion of car rental transactions originate via the Internet, and the hertz.com site is the most heavily trafficked car rental website on the Internet. (Kennedy Decl. ¶¶ 5–7.)

The Gator Corporation operates a software-based advertising network called the "Gator Advertising and Information Network" or the "GAIN® Network" ("the Network"). (Corcoran Decl. ¶ 3.) The GAIN network relies upon a program that TGC offers directly to computer users or bundles with software otherwise acquired by computer users. (*Id.*, Ex. 8 ¶¶ 3–4.) Through the GAIN Network, TGC "observes" the online behavior of computer users who have the requisite program. That is, the program sends to TGC information about which website the user has visited, and TGC then uses this information to target advertisements to the user. Through the Network, TGC causes advertisements tailored to the website visited by the user to "pop-up" in separate windows on the user's computer screen. TGC's clients hire it precisely for this purpose—to target advertisements to visitors of particular websites or types of websites. (TGC Support Brief at 8.)

So when computer users with the GAIN Network program visit "hertz.com", TGC learns through the Network that those users have visited the Hertz site and causes to "pop-up" advertisements that TGC thinks of interest to potential Hertz customers, including, for example, ads from travel companies, hotels, financial services companies, and even other car companies.

Hertz alleges that the process by which TGC "observes" users visiting the Hertz website involves the misappropriation of the Hertz trademark and other violations of intellectual property law. Hertz's complaint, filed against TGC on January 31, 2003, includes seven counts: (I) unauthorized trademark use, (II) false designation of origin, (III)copyright infringement, (IV) contributory copyright infringement, (V) tortious interference, (VI) trespass, and (VII) computer trespass. (Complaint ¶¶ 54–77.) Hertz's motion for a preliminary injunction, filed the same day as the complaint, relies only upon the misappropriation theory of Count I. Hertz asks the Court to issue a preliminary injunction against TGC precluding it from using the Hertz mark in its GAIN Network. That is, Hertz argues that TGC's using the Hertz mark to trigger the "pop-up" advertisements violates § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

Prior to Hertz's filing its complaint against TGC, other businesses whose websites TGC similarly targeted through its GAIN Network sued TGC. Five of those actions are currently pending in multiple federal district courts, as are five actions for declaratory relief brought by TGC itself. Two actions have been settled.[1] Also pending are four cases involving

---

1. The pending actions are: *Gator.com Corp. v. L.L. Bean,* Case No. C–01–1126–MEJ (N.D.Cal. Mar. 19, 2001); *The Gator Corp. v. L.L. Bean,* Case No. CV–01–1713–HU (D.Ore. Nov. 27, 2001); *United Parcel Service of Am. v. The Gator Corp.,* Case No. 1:02–CV–2639–BBM (N.D.Ga. Sept. 26, 2002); *The Gator Corp. v. Extended Stay America,* Case No. C–02–5226–CRB (N.D.Cal. Oct. 29, 2002); *Six Continents Hotels v. The Gator Corp.,* Case No. 1:02–CV3065–JOF (N.D.Ga. Nov. 12, 2002); *Extended Stay Am., Inc. v. The Gator Corp.,* Case no. 7:02–3845–20 (D.S.C. Nov. 14, 2002); *Lendingtree, Inc. v. The Gator Corp.,* Case No. 3:02–CV–519–V (W.D.N.C. Dec. 11, 2002); *The Gator Corp. v. PriceGrabber, Inc.,* Case No. C–02–5875–BZ (N.D.Cal. Dec. 16, 2002); *The Gator Corp. v. TigerDirect, Inc.,* Case No. C–02–5875–BZ (Dec. 19, 2002); *Tigerdirect, Inc. v. The Gator Corp.,* Case No. C–02–23615 (S.D.Fla. Dec. 20, 2002). The settled actions are: *Gator.com Corp. v. Virtu-*

WhenU, TGC's nearest software publishing competitor, that raise similar issues.

TGC filed a motion pursuant to 28 U.S.C. § 1407 before the MDL Panel on December 31, 2002 requesting consolidation in the Northern District of California of all pending actions related to the GAIN Network. The MDL Panel will hear argument of the motion on March 27, 2003, and a decision can be expected approximately four to six weeks after argument.

Because Hertz filed its complaint after TGC filed the consolidation motion, this action is not part of the original MDL motion. By Notice dated February 25, 2003, however, TGC designated this action a "tag-along" case before the MDL Panel pursuant to JPML Rules 7.2 and 7.5(d) & (e) because this action involves common questions of fact and of law with the other actions under consideration by the Panel. Having requested consolidation of the GAIN Network actions, TGC asks the Court to stay all proceedings, including consideration of Hertz's motion for preliminary injunction, pending an MDL Panel decision on the motion for consolidation.

## II. Discussion

The issues presented on TGC's motion to stay are whether the Court may stay the motion for preliminary injunction and, if so, whether staying these proceedings is appropriate under the applicable standards that guide the Court in the exercise of its discretion. The Court addresses these issues seriatim.

A. *Propriety of the Court's Issuing a Stay of Hertz's Preliminary Injunction Motion Pending the Decision of the MDL Panel*

▮ The Court may properly issue a stay notwithstanding the pending prelimi-

nary injunction motion. In general, the Court need not defer consideration of pretrial motions or stay pretrial proceedings pending decision of a motion before the MDL Panel. The Rules of Procedure of the Judicial Panel on Multidistrict Litigation expressly state that:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

J.P.M.L. Rule 1.5. The propriety of the Court's issuing a stay of the proceedings in this matter, then, is dependent upon the principles articulated in the precedents governing issuance of stays rather than the statute or MDL Panel Rules.

▮ Incidental to a trial court's power to schedule disposition of the cases on its docket is the power to stay those proceedings before it "so as to promote fair and efficient adjudication." *U.S. v. Breyer*, 41 F.3d 884, 893 (3d Cir.1994); *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir.1983)(citing *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). This power to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55, 57 S.Ct. 163. The party seeking the stay must demonstrate "a clear case of hardship or inequity, if there is even a fair possibility that the stay would work dam-

*mundo,* Case No. C–01–3167–MJJ (N.D.Cal. Aug. 16, 2001); *Washington Post.Newsweek Interactive Co., v. The Gator Corp.*, Case. No.

CV 02–909–A (E.D. Va. June 25, 2002). (*See* TGC Support Brief, Ex. C.)

age on another party." *Gold*, 723 F.2d at 1075–76 (citing *Landis* ).

 When a party asks the Court to stay a motion for pendente lite relief, however, the potential that a stay may render the party seeking that relief incapable of obtaining relief tempers the Court's discretion in issuing the stay in the first place:

> If a district court decides to stay proceedings for an indeterminate period and a party has competent and specific evidence tending to show that it will be unable to secure effective relief when the stay is terminated, the party in such jeopardy, in the absence of extraordinary circumstances, is entitled to have a motion for pendente lite relief considered on its merits.

*Rolo v. General Development Corp.*, 949 F.2d 695, 703–04 (3d Cir.1991).

In *Rolo*, an action in which the district court stayed the plaintiffs' preliminary injunction motion pending resolution of criminal cases and bankruptcy proceedings involving the plaintiffs, the court reversed and remanded the case for the district court's decision of the preliminary injunction motion. The Rolo Court reasoned that the district court's granting the stay was an abuse of discretion. The duration of the stay was indeterminate because the pending bankruptcy proceedings were not yet scheduled for hearing and the criminal proceedings would not even begin for five months. Also, the plaintiffs had introduced affidavits "tending to show that irreparable injury would occur in the interim," namely that the defendants were liquidating and distributing their assets in an effort to render themselves judgment proof. Thus, granting the stay was tantamount to denying the motion for preliminary injunctive relief. *Rolo*, 949 F.2d at 703–04.

Hertz, citing *Rolo* as factually similar, argues that the Court must deny TGC's stay motion because "the grant of the stay would delay the determination of Hertz's motion for at least several months." (Hertz Opp. Brief at 12.) Hertz thinks this delay amounts to a denial of its preliminary injunction motion. The Court, then, must consider whether a stay pending the MDL Panel consideration of TGC's motion is for an "indeterminate period" and, if so, whether there is "competent and specific evidence tending to show that [Hertz] will be unable to secure effective relief when the stay is terminated." *See Rolo*, 949 F.2d at 703–04.[2]

First, TGC does not seek a stay for an indeterminate period of time. In contrast to the unscheduled bankruptcy proceedings and five month delay until the start of the criminal trial in *Rolo*, TGC's motion for consolidation before the MDL Panel is scheduled for argument within the next two weeks, on March 27, 2003. Barring unusual circumstances, the MDL Panel will decide the motion in a relatively short period of time. This time period is about as determinate a time period can be when it depends upon the decision of a federal court. The stay is not for an "indeterminate" period. TGC's motion will be decided within the next few months, and the stay will expire ten days thereafter, in accordance with the Order issued this day.

---

**2.** TGC argues that by claiming it makes a strong showing of irreparable harm, "Hertz invites this court to wade in on the merits [of the preliminary injunction motion], an invitation that should properly be declined." (TGC Reply Brief at 5.) The Court may not properly decline the invitation. The clear language of *Rolo* requires the Court to consider Hertz's evidence allegedly showing irreparable injury, for the Court must assess whether Hertz will be able to secure effective relief if the Court stays their preliminary injunction motion.

Second, no competent evidence shows that Hertz would be unable to secure effective relief after the stay is terminated. Hertz alleges that it continues to suffer an irreparable injury requiring the Court's immediate decision of its motion. According to Hertz, TGC "dramatically escalated its assault on Hertz's website" in October 2002 (Kennedy Decl. ¶ 23), and this increased volume of pop-up ads is tarnishing Hertz's reputation because some consumers find these ads intrusive. Consumers, Hertz warns, may leave the Hertz website and "become less willing to return." (Corcoran Decl., Ex. G; Kennedy Decl. ¶¶ 31–32.) The injury is as substantial as it is irreparable, Hertz contends, because 20% of all car rentals are booked over the Internet, Hertz's website is the most popular car rental website, and TGC boasts that its pop-up ads generate a response rate of up to 45%. (Corcoran Decl. ¶ 11.)

These facts may ultimately show irreparable injury permitting issuance of a preliminary injunction, but the issue now before the Court is not whether preliminary relief should issue but whether a delay in deciding whether that relief should issue will render Hertz incapable of obtaining meaningful relief. The effect of the harm alleged by Hertz on its ability to secure effective relief post-stay, however, is substantially different from that shown in *Rolo*, where the plaintiffs showed that the liquidation and distribution of the defendants' assets during a stay would frustrate forever the plaintiffs' ability to secure a judgment. Here, Hertz does not offer "competent and specific evidence" showing that the Court will be unable to remedy whatever harm is done to Hertz by the pop-up ads during the temporary stay. After the MDL Panel decides the motion for consolidation and the stay expires, either this Court or the transferee court will decide the preliminary injunction motion; and a permanent injunction, statutory damages, or the other relief sought in the complaint will remain available to Hertz.

The Court is not required to deny TGC's motion. The stay is not for an indeterminate period of time, and Hertz can secure effective relief after the MDL Panel decides the consolidation motion.

### B. The Balance of the Interests Favors a Stay

■ Having concluded that the Court may, but is not required to, issue a stay of this action notwithstanding the pendency of Hertz's motion for a preliminary injunction, the question remains whether the Court ought to stay the proceedings when all the competing interests are considered. A stay is appropriate.

■ As discussed at the outset, the decision whether to stay proceedings is committed to the Court's discretion and requires the balancing of TGC's and Hertz's competing interests. *Landis,* 299 U.S. at 254–55, 57 S.Ct. 163; *Gold,* 723 F.2d at 1076. Because TGC requests the stay, it must demonstrate a clear case of hardship or inequity if there is at least a "possibility" the stay would harm Hertz. *See id.* at 1075–76.

There is at least a possibility that a temporary stay will harm Hertz. During the stay, TGC's frequent pop-up ads may be harmful to the substantial business Hertz claims it derives from the hertz.com website. Potential Hertz customers inundated with pop-up ads might not return to the Hertz site, put off by the appearance of the ads. Hertz might lose other customers who, tempted by the TGC ads, visit the websites of other corporations, including competitors. And, if, as Hertz alleges, TGC is misappropriating the Hertz trademark for use in the GAIN Network, the operation of that Network will harm Hertz throughout the duration of a stay each

time a computer user with the infringing software visits hertz.com.

Balanced against these potential harms to Hertz, however, are two clear hardships to TGC engendered by this and the other challenges to the TGC business model. First, TGC is defending its GAIN Network in multiple fora thereby multiplying its efforts and the costs of determining the validity of at least this aspect of its business. True, TGC itself initiated six actions for declaratory judgments. But whether TGC waits to be sued for its use of the GAIN Network or sues for a judgment declaring the network legal, TGC is defending that Network, the core of its business model. The Court recognizes the heavy financial burden on TGC borne by having to defend its Network in multiple fora. That burden is a clear hardship weighing in favor of staying this action until the MDL Panel renders its decision.

Second, Hertz's motion itself imposes a hardship on TGC given the pendency of the MDL motion. Hertz filed its complaint and moved for a preliminary injunction only after TGC sought consolidation, and Hertz now argues that the pendency of the motion for a preliminary injunction weighs in its favor. Hertz notes that, in the past, the MDL Panel has declined to consolidate cases in which motions for preliminary injunctions were sub judice. *See, e.g., In re Professional Hockey Antitrust Litigation,* 352 F.Supp. 1405 (J.P.M.L. 1973). But the cases cited involved motions that, to borrow the MDL Panel's language, had "progressed to a relatively advanced stage." *See In re L.E. Lay & Co. Antitrust Litig.,* 391 F.Supp. 1054 (J.P.M.L.1975). This case has barely begun.

Regardless, the issue here is not what the MDL Panel may or may not do but whether a stay is appropriate while the MDL Panel decides what to do. The pendency of the motion for a preliminary injunction in this action weighs more heavily in favor of granting the stay than against it in this case. The Court's considering Hertz's motion before the MDL Panel decides the motion for consolidation would deprive TGC of the opportunity to obtain the benefits of MDL Panel consolidation. TGC potentially would have conflicting decisions by this Court and the transferee court, if the MDL Panel grants the motion, thereby decreasing a primary benefit of consolidation, namely consistent rulings on important pretrial legal issues. This may be a hardship unique to actions where both a motion for a preliminary injunction and a motion to consolidate are pending concurrently; but it is a hardship nonetheless, and it weighs in favor of a stay.

Moreover, Hertz waited to file its complaint and motion for a preliminary injunction until at least three and one-half months after an alleged increase in TGC pop-up ads on hertz.com began to cause irreparable damage. Hertz properly notes that its delay does not preclude the Court from granting a preliminary injunction because, between the time it learned of the injury and filed the complaint and motion, Hertz investigated the matter and prepared its legal arguments and facts. *See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254, 264 (3d Cir. 2000) ("[A] delay caused by a plaintiff's good faith efforts to investigate an infringement or to determine how serious an infringement is does not preclude a finding or irreparable harm."). The fact that Hertz voluntarily delayed its seeking relief, no matter how justified, however, weighs in favor of the Court's granting a short stay to allow the MDL Panel to decide the motion for consolidation. The delay already incurred by Hertz suggests that an additional short delay will not render significant additional harm to Hertz,

and any additional harm done is outweighed by the hardship on TGC if the Court denies the stay and considerations of judicial economy, the final factor in the Court's analysis.

Turning to this final factor, apart from the hardships on TGC, considerations of judicial economy weigh against the potential harm to Hertz and in favor of the stay. The express language of § 1407 provides that civil actions may be transferred for coordinated and consolidated pretrial proceedings, inter alia, to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Without a short stay, the Court loses the potential efficiencies that would be created by having pretrial issues involving common facts and law decided by a single judge.

A transferee judge would be responsible for managing all cases by and against TGC involving the GAIN Network. That judge would have the opportunity to become familiar with the technology at issue and evaluate the facts, rendering consistent pretrial decisions in all of the consolidated actions based upon that more thorough understanding. To decide Hertz's motion before the MDL Panel decision, the Court would have to invest the time and resources in understanding the technology at issue and develop a better understanding of the facts than the parties have presented thus far. Given the short time until the MDL Panel will consider the motion, this Court's immediate and substantial investment of time is a waste of judicial resources.

All this is to say that balanced against the possible harm to Hertz caused by a short delay in the Court's deciding its motion for a preliminary injunction are TGC's actual hardship in terms of its financial burden and duplicative effort in defending its GAIN Network, the potential lessening of that hardship by MDL Panel consolidation, and considerations of judicial economy. While it is a close call, this balance tips in favor of granting a temporary stay pending the MDL Panel's decision whether to consolidate this action with others involving the GAIN Network. The Court, therefore, grants TGC's motion for a temporary stay of this action.

## III. Conclusion

For the foregoing reasons, the defendant's motion to stay these proceedings is granted. All proceedings in this matter, including the plaintiff's motion for a preliminary injunction, are hereby stayed until ten days from the final decision of the MDL Panel on TGC's motion for consolidation. The parties should advise the Court forthwith of the MDL Panel's decision. An appropriate order follows.

### ORDER

This matter having come before the Court on defendant The Gator Corporation's ("TGC") motion to stay proceedings; and

The Court having held oral argument on March 10, 2003 and considered the submissions of the parties; and

For the reasons set forth in the Opinion issued this day; and

Good cause having been shown;

It is this 13th day of March, 2003 ORDERED that all proceedings in this action, including plaintiff The Hertz Corporation's motion for a preliminary injunction, are stayed pending the decision by the Judicial Panel on Multidistrict Litigation on TGC's motion to coordinate and consolidate this action with other actions involving TGC; and

IT IS FURTHER ORDERED that the stay of these proceedings shall expire ten (10) days after the issuance of the final

order of the MDL Panel on the motion for consolidation, and the parties shall advise the Court forthwith of the MDL Panel's final decision.