**Thomas and Merrilou KEDZIORA,
Plaintiffs,**

v.

**CITICORP NATIONAL SERVICES, INC.,
Citicorp Acceptance Company Inc.,
and Citicorp, Defendants.**

No. 91 C 3428.

United States District Court,
N.D. Illinois,
Eastern Division.

March 30, 1995.

---

Daniel A. Edelman, Cathleen M. Combs, Edelman & Combs, Francine Schwartz, Law Offices of Francine Schwartz, Lawrence Walner, Carol Jill Coplan, Lawrence Walner & Associates, Ltd., Lisa I. Vessey, Law Offices of Lisa I. Vessey, Chicago, IL, for Thomas S. Kedziora, Merrilou Kedziora.

Alan Norris Salpeter, Terri A. Mazur, Jeffrey S. Kinsler, Victoria R. Collado, Lynne M. Raimondo, Mayer, Brown & Platt, Chicago, IL, for Citicorp Nat. Services, Inc.

Alan Norris Salpeter, Terri A. Mazur, Jeffrey S. Kinsler, Lynne M. Raimondo, Mayer, Brown & Platt, Chicago, IL, for Citicorp Acceptance Co. Inc.

Alan Norris Salpeter, Jeffrey S. Kinsler, Victoria R. Collado, Lynne M. Raimondo, Mayer, Brown & Platt, Chicago, IL, for Citicorp.

James O. Latturner, Edelman & Combs, Chicago, IL, for amicus curiae Community Thrift Club, Julayne Dickson, Theodore Hudson.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Thomas and Merrilou Kedziora ("Kedzioras"[1]) have sued Citicorp National Services, Inc. ("Citicorp"[2]), claiming that automobile leases issued by Citicorp have violated the Consumer Leasing Act, 15 U.S.C. §§ 1667–1667e (the "Act"[3]) and its implementing regulations.[4] Jurisdiction is grounded both in 28 U.S.C. § 1331 and in Section 1667d(c).

This Court[5] previously granted Citicorp's motion to dismiss much (though not all) of

---

1. The Court continues to recognize that Merrilou's last name is now Channell. However, we continue to follow the practice of the litigants in using the collective term "Kedzioras" to refer to the two name plaintiffs.

2. The Court will also continue to employ the collective term "Citicorp" to refer to the current defendant and two of its subsidiaries, who were former defendants in this case. For simplicity and for consistency with the earlier opinions, this opinion will continue to employ "Citicorp" to refer to the remaining defendant.

3. All citations to Title 15 will take the form "Section—."

4. All citations to those Regulations will take the form "Reg. M—," omitting (for convenience) the applicable reference to 12 C.F.R.

5. This case was originally assigned to Judge Shadur's calendar. By order of the Executive Com-

the Kedzioras' original Complaint. Portions of Counts I, IV and V survived. Counts II and III, the Kedzioras' class and individual disclosure violation claims under 15 U.S.C. section 1667a(11) and Regulation M §§ 213.4(a) and (g)(10), were dismissed in their entirety. The Kedzioras subsequently amended the remaining portions of their Complaint twice and filed a motion for class certification pursuant to Fed.R.Civ.P. ("Rule") 23, which the Court granted.[6] Citicorp then filed a motion for summary judgment on the remaining claims in the Second Amended Complaint, contending that there was no genuine issue of material fact regarding the reasonableness of the Kedzioras' early termination charge under § 1667b(b) of the Act, because Citicorp reduced the stream of accelerated payments and unearned finance charges to present value. Citicorp also moved for summary judgment on its Counterclaim, which demands payment by the Kedzioras of the remaining amounts allegedly due under Citicorp's lease agreement with the Kedzioras (the "Lease"). On February 24, 1994, the Court denied both aspects of Citicorp's motion for summary judgment, holding that "[m]aterial factual issues stand in the way...." (Feb. Op. at 20). The Court identified the genuine issue as whether Citicorp included the entire residual value of $6,362 in the early termination charge, rather than a discounted present value of that amount. (Feb. Op. at 16–17, 20).

This material factual issue is now the subject of a supplemental motion for summary judgment pending before this Court. In addition, the Kedzioras have filed a motion to reconsider the Court's dismissal of their disclosure claims in light of *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir.1994). For the reasons which follow, the Court grants Citicorp's motion for summary judgment on the Kedzioras' Second Amended Complaint and on Citicorp's Counterclaim, as to liability only. However, this judgment must be stayed pursuant to Rule 62(h), because, although the Kedzioras' motion to reconsider is denied, the legal theory asserted has merit. Therefore, the Court is giving the Kedzioras twenty-eight (28) days from the date of this order to file a Third Amended Complaint (accompanied by the appropriate motion for leave to file, pursuant to Rule 15(a)) which raises, in specific terms, the disclosure claim asserted in the motion to reconsider. The amendment shall be limited to the Section 1667a(11) claim.

### *Citicorp's Motion for Summary Judgment*

#### A. Standards

Federal Rule 56(c) Summary Judgment is appropriate when there remains no genuine issue of material fact upon which a reasonable jury could find in favor of the nonmoving party, or the moving party is entitled to judgment as a matter of law. "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, to demonstrate through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513–14,

---

mittee, it was reassigned to this Court's calendar effective May 26, 1994.

**6.** That order defined the class as:
All natural persons who (a) entered into a car lease primarily for personal, family or household purposes, which was assigned to Citicorp National Services, Inc. ("CNS") or Citicorp Acceptance Company, Inc. ("CAC"); (b) signed a lease agreement with the same early termination provisions as those in the Lease at-

tached as Exhibit A to the plaintiff's complaint, for a duration exceeding four months, and for a total lease obligation not exceeding $25,000; (c) terminated (whether voluntarily or by default) their leases after May 6, 1990, but before the scheduled termination of their leases, and returned their car or the insurance proceeds thereon to CNS or CAC; and (d) were assessed an early termination or default deficiency.

91 L.Ed.2d 202 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992). A metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. Nonetheless, the Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10; *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Id.* at 249–250.

### B. Facts [7]

On September 1, 1988, Thomas Kedziora entered into a 60–month Lease for a 1989 Pontiac Grand Prix (the "Car") with a car dealer (the "Dealer"), and the Lease was assigned to Citicorp immediately after its execution. That assignment was expressly contemplated in the Lease, which states that its disclosures are made on behalf of Citicorp and that the Dealer intends to assign the Lease to Citicorp as soon as it is signed by the lessee.

The Dealer and the Kedzioras agreed on the selling price of the Car as $15,581.94, with Citicorp having no role in negotiating that amount. Under the Lease, the Kedzioras owed monthly lease payments that included both a depreciation component and an interest charge component. Each monthly payment amounted to $278.79—the sum of $175.35 (the depreciation component) and $103.44 (the interest charge).

Citicorp paid the Dealer $15,929.21 for the Lease, a figure derived by subtracting the amounts that the Dealer received directly from the Kedzioras from the purchase price. If the Kedzioras had made all the payments required under the Lease, they would have paid a total of $16,727.40—$10,521 allocable to depreciation and $6,206.40 in interest charges. The Kedzioras never completed the 60–month term. On August 19, 1990, in the 24th month of the Lease, the Car was totally destroyed in an accident, an event that constituted a default and triggered the early termination of the Lease. Early termination of the Lease required the Kedzioras to pay an early termination charge made up of: (1) all past-due unpaid amounts; (2) all remaining monthly payments due on the Lease after the date of termination, reduced by both: (a) the unearned amount of interest calculated by the Rule of 78s, and (b) all sales, use and rental taxes due on those remaining monthly payments; (3) the disposition charge; (4) the estimated wholesale value of the Car at the end of the originally-agreed-upon Lease term (the "Residual Value"); and (5) any government fees and taxes due in connection with the early termination of the Lease.

In the Kedzioras' case, Citicorp calculated a total early termination charge of $12,994.14. For that purpose, Citicorp used the actuarial method, and *not* the Rule of 78s, in determining the unearned portion of the interest charge, and it also did not include any mileage charges. Because the total insurance proceeds credited to the Kedzioras came to $10,306, according to Citicorp, the Kedzioras remained personally liable for $2,688.14.

The additional undisputed facts necessary to resolve the remaining issue are as follows. Citicorp used "Payoff Method 3" to calculate the Kedzioras' payoff amount at the time of early termination. Under Payoff Method 3, the total payoff amount equals *"the present value of the remaining rent and residual value discounted at the running rate in the lease."* The Kedzioras' payoff amount calculated under the present value formula of

---

7. The following undisputed facts have been extracted from pp. 4–7 of the Court's Feb. 24, 1994, Memorandum Opinion and Citicorp's Supplemental Statement of Material Facts, filed pursuant to Local Rule 12(M) in support of its Supplemental Motion for Summary Judgment.

Payoff Method 3 equalled $12,984.14, which included a reduction to present value of the Residual Value of $6,362. The Kedzioras also owed a $10 late payment fee, which led to a total payoff amount of $12,994.14. Citicorp then credited the Kedzioras with the $10,306 in insurance proceeds, which they remitted to Citicorp. Paragraph 17 of the Lease provides that the Kedzioras remain personally liable for the difference between the total payoff amount ($12,994.14) and the insurance proceeds ($10,306), which yielded a balance of $2,688.14.

### C. Analysis

Section 1667b(b) of the Act provides:

**§ 1667b. Lessee's liability on expiration or termination of lease**

**Penalties and charges for delinquency, default, or early termination**

(b) Penalties or other charges for delinquency, default, or early termination may be specified in the lease but only at an amount which is reasonable in light of the anticipated or actual harm caused by the delinquency, default or early termination, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.

15 U.S.C. § 1667b(b). The Court previously held that Section 1667b(b) "renders liquidated damage clauses enforceable if they provide a reasonable estimation of damages either anticipated at the time of contracting or suffered in fact at the time of the breach." (Feb. Op. at 8).

Applying this standard to the Kedzioras' Lease, the Court found that there are "three components needed to place Citicorp in a position equivalent to the one that it would have occupied but for the Kedzioras' early termination":

1. Citicorp is entitled to receive the present value (discounted at the appropriate rate) of what could have been the remaining monthly payments of $278.79.

2. It is also entitled to receive the similarly discounted present value of the originally anticipated Residual value of $6,362.

3. It must give credit against the sum of those amounts for the amount that it has received for the Car, in this instance the insurance proceeds of $10,306.

The Court concluded that Citicorp had established the first and third elements, but that a material issue of fact remained as to the second element because it appeared that Citicorp may not have reduced the Residual Value component to present value. *Id.* at 16. This then is the sole remaining issue in this case, notwithstanding the Kedzioras' motion to reconsider.

 The parties now concede that Citicorp's regular use of an actuarial method, rather than the Rule of 78s, to calculate early termination charges in cases of default is reasonable under section 1667b(b) of the Act. The parties also now concede that Citicorp used the actuarial method to reduce to present value the Residual Value component of the Kedzioras' Lease charge. These admissions thus resolve "the only unresolved factor that [previously] block[ed] summary judgment in Citicorp's favor." (Feb. Op. at 17). Similarly, the parties' admissions regarding the reasonableness of the actuarial method used to calculate the Kedzioras' early termination charge necessarily results in a finding that the Kedzioras are liable for the amount of the termination charge which remains due and owing—as alleged in Citicorp's Counterclaim.

 The only potential issue in dispute is whether Citicorp's admitted practice of calculating "early [involuntary] termination liability by a formula slightly different than that contained in the lease" (Supp. 12(M) ¶ 3; Citicorp's Reply to MSJ at 6 n. 2 and Resp. to M–Rec. at 9 n. 3) for voluntary terminations, results in the imposition of an unreasonable early termination charge on lessees who terminate their leases voluntarily, rather than as a result of default. The Kedzioras argue that the Rule of 78s—as applied to lessees who (unlike them) terminate their lease with Citicorp voluntarily—results in a penalty and thus an unreasonable termination charge under 15 U.S.C. § 1667b(b).

Whether the use of the Rule of 78s, which may result in a penalty to the lessee who voluntarily chooses to terminate the lease before completion of the lease term, is "rea-

sonable" under Section 1667b(b), is an issue that is not before this Court. The Kedzioras lack standing to litigate the reasonableness of lease provisions which were not applied to them. Thus, although the certified class includes, "all natural persons who (a) entered into a car lease . . . assigned to Citicorp . . . (b) signed a lease agreement with the same early termination provisions as those in the [Kedzioras'] Lease . . . [and] (c) terminated (whether voluntarily or by default) their leases after May 6, 1990 but before the scheduled termination . . . and (d) were assessed an early termination or default deficiency[,]" the Kedzioras are inadequate class representatives for the class of lessees who terminated their leases voluntarily, rather than by default.

■ Rule 23(c)(1) gives the Court authority to "alter or amend" the certified class "before the decision on the merits." The Kedzioras request leave to add additional class representatives who have standing to litigate the Rule of 78s issue. Citicorp argues that it is too late in the litigation to add a new class representative to this case. As Citicorp notes, the Kedzioras have known for more than two years that they lacked standing to litigate the Rule of 78s issue, because Citicorp applied an actuarial formula to calculate the termination charge under their Lease. Given these facts, and the posture of this case, the Court believes that justice is best served by amending the class definition, in this case, to include only those persons who terminated their leases after May 6, 1990, but before the scheduled termination of their leases, as the result of default, rather than a voluntary choice.[8] Those persons who voluntarily terminated their leases and who wish to pursue an action against Citicorp

may bring a separate lawsuit with adequate class representatives. The Kedzioras cannot now maintain a class action on their behalf.

### *The Motion to Reconsider*

■ The Kedzioras' motion will be considered as falling under Rule 60(b). *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1991). As is the case for a motion to alter or amend a judgment under Rule 59(e), a motion for reconsideration brought under Rule 60(b) is not at the disposal of parties who want to "rehash" old arguments, *In re Oil Spill by Amoco Cadiz*, 794 F.Supp. 261, 267 (N.D.Ill.1992), *aff'd*, 4 F.3d 997 (7th Cir. 1983); *Quaker Alloy Casting v. Gulfco Indus. Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988), or raise new arguments for the first time. *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir.1995) (citing *Laserage Tech. v. Laserage Labs.*, 972 F.2d 799, 804 (7th Cir.1992)). Raising an argument for the first time in a motion for reconsideration "is too little too late," and renders the argument waived for purposes of appeal. *Id.* The record reveals that the Kedzioras' *Highsmith* claim is a new legal theory which Judge Shadur was not given an opportunity to consider at the time he dismissed the disclosure claims alleged in ¶ 31(a) of the original complaint.[9] Therefore, reconsideration of Judge Shadur's rulings is inappropriate. Moreover, this Court tends to apply stringent standards when asked to reconsider the dispositive rulings of its colleagues in cases subsequently reassigned to this Court's calendar, *see, e.g., Williams v. Katz*, 1994 WL 405923 (N.D.Ill.1994). This case does not meet the test.

### A. The *Highsmith* Claim

In *Highsmith*, the plaintiffs entered into a consumer automobile lease with the defen-

---

**8.** Thus, the new class definition in this case is as follows:

> All natural persons who (a) entered into a car lease primarily for personal, family or household purposes, which was assigned to Citicorp National Services, Inc. ("CNS") or Citicorp Acceptance Company, Inc. ("CAC"); (b) signed a lease agreement with the same early termination provisions as those in the Lease attached as Exhibit A to the plaintiff's complaint, for a duration exceeding four months, and for a total lease obligation not exceeding $25,000; (c) terminated *by default only* (i.e., on account of accident or theft) their leases after May 6,

1990, but before the scheduled termination of their leases, and returned their car or the insurance proceeds thereon to CNS or CAC; and (d) were assessed an early termination or default deficiency.

**9.** Judge Shadur's subsequent denial of the Kedzioras' attempt to restate the claim, once it was discovered that Citicorp used an actuarial method, rather than the Rule of 78s, to calculate their termination charge under the Lease, is not the subject of a judgment or order which this Court can reconsider.

dant, Chrysler Corporation. The Lease specified that, in the event of default or early termination, the lessee would be liable for early termination charges calculated in accordance with the provisions in the lease. The plaintiffs filed suit against Chrysler alleging, among other things, that the early termination charges were unenforceable, because they were "unreasonable" penalties under Section 1667b(b) of the Consumer Leasing Act. Plaintiffs also claimed that the leases violated the disclosure requirements of Section 1667a(1)–(11) of the Consumer Leasing Act. Only the Section 1667a(11) disclosure claim discussed in *Highsmith* is presently at issue in this case.

Section 1667a(11) provides that every lessor involved in a consumer lease must provide the lessee a statement describing "the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination." 15 U.S.C. § 1667a(11). The regulations which implement this statute, commonly known as "Regulation M," require the lessor to disclose "the amount or method of determining the amount of any penalty or other charge for

early termination." 12 C.F.R. § 213.4(g)(12) (1994).

In *Highsmith*, Chrysler disclosed a formula for determining its early termination charge which did not discount either the accelerated lease payments or the amount of unearned finance charges to present value. On appeal,[10] the plaintiff argued that Chrysler regularly uses a formula for determining the early termination charge that is different from the one they disclosed in their leases. Specifically, the plaintiff claimed that, after going through the calculation as described in the lease, Chrysler would reduce the "penalty" by the amount of any unearned finance charges.

The Court of Appeals found that, "whether Chrysler, as a rule, provides an adjustment to the early termination charge is a question of fact" for the district court. *Highsmith*, 18 F.3d at 438. However, "failing to disclose any portion of the formula that a lessor actually uses for calculating the early termination charge, will give rise to a technical violation of the disclosure provision found in 15 U.S.C. § 1667a(11) and Regulation M." [11]

**10.** In the district court, the plaintiffs argued that the early termination formula disclosed in Chrysler's lease did not discount either the accelerated lease payments or the unearned finance charges to present value. The plaintiffs concluded that this formula resulted in a penalty which, because it was disclosed, violated the disclosure requirement of Section 1667a(11). The Court of Appeals held that "[t]he district court correctly dismissed that claim ... [because] [t]here is no disclosure violation if a lessor discloses an accurate, albeit unenforceable, formula." *Highsmith*, 18 F.3d at 437.

**11.** A violation occurs, held the Court, even when "the lease states a formula that produces an early termination charge that is in fact much larger than the actual charge that will be imposed." *Highsmith*, 18 F.3d at 438. According to the Panel, the *real* cost to the lessee is the loss of information prior to signing the lease. It is at this moment "[w]hen a lessee begins to consider ... what penalties he will face for ... early termination[,]" and "whether he should terminate his lease early.... If the formula disclosed is inaccurate, either too high or too low, the lessee will be unable to assess the true costs of termination and unable to make a truly rational decision." *Id.*

The Appellate Court noted, however, that Section 1667a(11) is not violated when a lessor "forbear(s) from imposing early termination

charges in certain 'hardship' cases where the lessee is unable to pay." *Id.* at 439. According to the Court, lessors "always have the ability to forbear from imposing charges or to reduce charges on a case-by-case basis if they feel any particular lessee labors under a financial hardship." *Id.* The hardship exception was not present in *Highsmith*, however, because Chrysler failed to disclose a portion of the formula which it regularly applied to termination charges. *Id.*

Citicorp argues that *Highsmith*'s "hardship exception" should apply in this case, exonerating its company from any liability under Section 1667a(11) for a disclosure violation, because defaults are "hardship" cases (i.e., lessees are under a financial hardship where their leased car has been totally destroyed). Citicorp's argument is not supported by the reasoning of *Highsmith*. *Highsmith* contemplates an exception to the rule of liability based on individual need. Citicorp seeks to extend this exception to a rather broad category of hardship cases, rather than the limited individual application contemplated by *Highsmith*. The Court believes that Citicorp's admittedly regular application of an undisclosed method, although more reasonable than the disclosed Rule of 78s, is nonetheless the kind of disclosure violation contemplated by the Court of Appeals in *Highsmith*. We therefore refuse to extend the hardship exception beyond the scope of individual hardship.

*Id.* The Court of Appeals therefore found that the disclosure violation alleged by the *Highsmith* plaintiffs presented a claim upon which relief could be granted, and the district court's dismissal of the claim was held improper.[12]

### B. The Kedzioras' *Highsmith* Claim

The Kedzioras' claim that, although the Rule of 78s was the disclosed method of calculating early termination charges for both defaults and voluntary terminations under Lease ¶ 17, Citicorp's regular application of an undisclosed actuarial method in cases of default is a "technical" disclosure violation under Section 1667a(11) and Regulation M. The Kedzioras then request reconsideration of Judge Shadur's dismissal of their broadly pled disclosure claim in ¶ 31(a) of the original complaint, conceding (as they must) that the present legal theory was not raised, but arguing that both the legal and the factual basis for this legal theory was not available at that time.

The Kedzioras' new *Highsmith* claim has merit. Citicorp concedes that in cases of theft and destruction (default cases), it treats the early termination as an "involuntary" as opposed to a "voluntary" action and applies an undisclosed actuarial method to calculate the termination charge under Lease ¶ 17, rather than the disclosed Rule of 78s.[13] Use of an actuarial method thereby results in a termination charge which has been discounted to present value, rather than one that has not. Although the actuarial method applied to the Kedzioras' Lease resulted in a lower charge, and thus a "better deal," the fact of nondisclosure constitutes a technical violation of the disclosure provisions in Section 1667a(11), because Citicorp applied the undisclosed formula on a regular basis to "involuntary" terminations. Under *Highsmith*, these admissions provide a firm basis for liability.

A motion to reconsider is not the proper vehicle for the Kedzioras' assertion of a *Highsmith* disclosure claim. Although a significant change in the law may justify reconsideration, *Highsmith* did not change the law. The law, as provided in Section 1667a(11) and Regulation M, is the substantive legal basis upon which federal jurisdiction rests and has not changed since the day the Kedzioras filed their original, let alone their Second Amended, Complaint. Section 1667a(11) provided a basis upon which the Kedzioras could assert any legal theory which the facts supported, and it is somewhat disingenuous for the Kedzioras' counsel to now claim that he did not raise the *Highsmith* claim, in this case,[14] because "there was no law supporting this claim" until *Highsmith* was issued. *Highsmith* is simply a case interpreting Section 1667a(11), the substantive statute. Admittedly, the disclosure claims in *Highsmith* closely resemble the claim the Kedzioras now seek to raise, and *Highsmith* strongly supports a finding of liability against Citicorp. However, *Highsmith* did not change the law; it simply added more definition to it.

### C. Amendment

■ Apparently, the Kedzioras believe that this Court is able to review the dismissal of a colleague's order dismissing a claim in the same way the Court of Appeals reviewed the plaintiffs' disclosure claims in *Highsmith*. The Kedzioras are mistaken. This case is before this Court in a wholly different posture. We are not directly reviewing Judge Shadur's dismissal of the original complaint,

---

12. Notably, the theory which the appellate court found actionable was not presented to the district court. The district court dismissed the claim on a wholly different ground, one that the appellate court also found meritless. The plaintiffs' cognizable theory was presented for the first time on appeal from the district court's dismissal of the claim.

13. Specifically, Citicorp admits that it "regularly use(s) the formula disclosed in its lease (the rule of 78s) to calculate early termination liability" when a lease is terminated *voluntarily.* "[T]he only time Citicorp calculates early termination liability by a formula slightly different than that contained in the lease" is when a lessee totally destroys the car (i.e., when a lease is terminated *involuntarily* or by default). (Citicorp's Reply (doc. # 157) at 6 n. 2 and Citicorp's Response (# 167) at 9 n. 3).

14. The Kedzioras' counsel also served as plaintiffs' counsel in *Highsmith*. And while plaintiffs' counsel was aware of the potential issue, so was Citicorp's counsel: Mayer Brown & Platt also represented Chrysler Corporation.

although that order is concededly interlocutory, rather than a final judgment under Rule 54(b). Rather, we have been presented with a motion to reconsider rulings which did not address the Kedzioras' new disclosure claims. Although the distinction may be academic, this Court does not believe that reconsideration of issues never presented nor ruled upon is proper under Rule 60(b)—or 59(e) for that matter. A motion to amend the Second Amended Complaint under Rule 15(a) is a better way to raise the new theory, and the Court of Appeals in this Circuit tends to allow amendments, even for new factual allegations raised for the first time on appeal, provided they are consistent with the complaint. *Highsmith,* 18 F.3d 434, 439 (citing *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963–64 (7th Cir.1992), and *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992)). Although it appears that Judge Shadur denied a similar request by the Kedzioras when the Second Amended Complaint was filed, this Court believes that the claim asserted is so clearly cognizable under *Highsmith,* that it would be unjust to deny amendment, even at this late date.

## CONCLUSION

The Clerk of the Court is directed to enter a judgment in favor of Citicorp and against the Kedzioras on all claims set forth in the Second Amended Complaint, namely, the Kedzioras' contentions that Citicorp's leases violate Section 1667b(b) of the Act. In addition, the certified class is amended, pursuant to Rule 23(c)(1), to exclude all lessees whose termination charges were calculated using the Rule of 78s, rather than an actuarial method, because they voluntarily terminated, rather than defaulted, on their leases.

The Clerk of the Court is also directed to enter judgment in favor of Citicorp and against the Kedzioras on Citicorp's Counterclaim, demanding payment for the remaining amounts due under Citicorp's lease agreement with the Kedzioras, in the amount of $2,688.14 plus prejudgment interest. The enforcement of these judgments, however, must be stayed under Rule 62(f), pending resolution of the potential amended claim. Therefore, this case shall not be terminated.

Accordingly, pursuant to Rule 15(a), the Kedzioras are given twenty-eight (28) days from the date of this order to amend the Second Amended Complaint. This amendment shall be limited solely to presentation of the Section 1667a(11) disclosure claim. Any attempt to assert additional theories will be rejected, the amendment will be denied, and a final judgment will be entered in favor of Citicorp. Once the Third Amended Complaint is filed, the Court will set a status to discuss further proceedings.