

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-1998

# Michelson v. Citicorp Natl Ser

Precedential or Non-Precedential:

Docket 97-5157

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Michelson v. Citicorp Natl Ser" (1998). *1998 Decisions*. Paper 43.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/43

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 11, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5157

WILLIAM H. MICHELSON, on behalf of himself and all
others similarly situated,
        Appellant

v.

CITICORP NATIONAL SERVICES, INC.,
f/k/a/ CITICORP ACCEPTANCE COMPANY, INC.

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-00032)

Argued: October 28, 1997

Before: SLOVITER, NYGAARD and
KRAVITCH,* Circuit Judges

(Opinion Filed March 11, 1998)

Daniel A. Edelman
Cathleen M. Combs (Argued)
James O. Latturner
Jennifer R. Shapiro
Edelman & Combs
Chicago, IL 60603
 Attorneys for Appellant

_____

* Hon. Phyllis A. Kravitch, Senior United States Circuit Judge for the
Eleventh Circuit, sitting by designation.

          Terri A. Mazur (Argued)
          Victoria R. Collado
          Mayer, Brown & Platt
          Chicago, IL 60603
           Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge,

Appellant William H. Michelson filed a class action complaint in the district court of New Jersey against Citicorp National Services, Inc. [CNS], a corporation headquartered in the State of Missouri, alleging that CNS imposed unreasonable early termination fees in connection with its consumer automobile leases and that it failed adequately to disclose the nature of those fees, in violation of the Consumer Leasing Act [CLA], 15 U.S.C. S 1667b,1 and its implementing regulation.2 Before the court ruled on class certification, Michelson sought leave to amend the complaint to add 39 additional plaintiffs as additional class representatives and filed a new motion for class certification based on the proposed amended complaint. The district court, relying on the authority of Colorado River Water Conservation Distr. v. United States, 424 U.S. 800 (1976), denied Michelson's motion, denied certification of a plaintiff class, and sua sponte stayed Michelson's individual claim pending the resolution of a related state court action in Missouri. Michelson appeals from that order.

_____

1. The relevant statutory section, generally termed the "reasonableness" provision, states:

>  Penalties or other charges for delinquency, default, or early termination may be specified in the lease but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the delinquency, default, or early termination, the difficulties of proof of loss, and the inconvenience or nonfeasibility of
> otherwise obtaining an adequate remedy.

15 U.S.C. S 1667b(b).

2. The disclosure requirements are contained in 12 C.F.R. S 213.

The thrust of Michelson's argument on appeal is that the district court misapplied the Colorado River doctrine because the federal and state actions involve different parties and are not truly "parallel." Appellee CNS concedes that the Colorado River doctrine would not be applicable to certain elements of Michelson's case but argues that the district court's order was entered only in part pursuant to Colorado River and is not a final order. Accordingly, CNS contends that this court lacks jurisdiction over Michelson's appeal, which is the threshold question before us.)

I.

The convoluted procedural history of this case began on May 6, 1991 when Merrilou Kedziora[3] filed a class action against CNS in Illinois state court. The complaint alleged, inter alia, that the manner in which CNS calculated early automobile lease termination fees and charges, known as the Rule of 78s or the Sum-of-the-Digits method, invariably favored the lessor and was unreasonable. In addition, the complaint alleged that CNS inadequately disclosed the effect of its use of the Rule of 78s in its lease agreements. That suit, premised on the CLA, the Missouri Merchandising Practices Act, Mo. Rev. Stat. SS 407.010, et seq., [MMPA] and Illinois state law, was removed to the United States District Court for the Northern District of Illinois on June 4, 1991.

On November 21, 1991, before a plaintiff class was certified, the district court in Illinois granted CNS's motion to dismiss the disclosure claims under the CLA for failure to state a claim upon which relief could be granted. See Kedziora v. Citicorp Nat'l. Servs., Inc., 780 F. Supp. 516, 529-31 (N.D. Ill. 1991), aff 'd in relevant part, Channell v. Citicorp Nat'l. Servs. Inc., 89 F.3d 379, 383 (7th Cir. 1996). This left pending the plaintiffs' claims under state law and their claim that CNS's use of the Rule of 78s was unreasonable under the CLA. Several months later, in March of 1992, the Illinois plaintiffs voluntarily dismissed their state law claims, and refiled their MMPA claim in

_____

3. Originally, Thomas Kedziora was also named as a plaintiff but he dropped out of the suit during the pendency.

3

Missouri state court. The latter claim alleged that the use of the Rule of 78s to determine early termination deficiencies was unreasonable under Missouri law. The corresponding federal claim under the CLA was not asserted in the Missouri action, however, because that claim was still pending in federal court in Illinois. The Missouri state court complaint pleaded only an opt-in class action. Michelson, the plaintiff here, did not opt in.

On October 15, 1992, a plaintiff class was certified in the action pending in federal court in Illinois consisting of all those with private automobile leases assigned to CNS as defined in the complaint and who were assessed early termination or default deficiencies. See Kedziora, No. 91 C 3428, 1992 WL 300982 (N.D. Ill., Oct. 15, 1992). Michelson was a member of that class. Supp. App. at 101. Several years later, the district court in Illinois narrowed the scope of the plaintiff class. See Kedziora, 883 F. Supp. 1155 (N.D. Ill. 1995). It found that Kedziora's lease was terminated involuntarily and that CNS did not employ the Rule of 78s in cases of involuntary termination. Thus, the court concluded that Kedziora, the named plaintiff in that case, did not have standing to pursue the claims of the members who had terminated their leases voluntarily and were challenging the reasonableness of the Rule of 78s. Id. at 1159-60. This had the effect of excluding many former class members, including Michelson. Consequently, as of the date of that ruling, Michelson was not a party to any relevant litigation pending in any court.

On January 5, 1996, Michelson, a New Jersey resident, filed the class action complaint in the case at bar in the United States District Court for the District of New Jersey. He alleged that in April of 1988 he had leased a new Eagle Premier LX for 48-months. Under the lease, Michelson's payments totaled $14,472, including a finance charge or "lease charge" of $4,263.84. In September of 1991, he terminated the lease because, according to him, the car was a "lemon." CNS then determined that Michelson still owed $1,814.49 in remaining payments (calculated pursuant to the Rule of 78s) and $5,221.29 for the residual value of the car. Michelson claims he paid the $1,814.49 in remaining payments upon termination. CNS then sold the car at

4

auction for $4,040, applied the proceeds toward Michelson's ultimate liability and sought only $1,171.29 from him. Michelson contested that amount but forwarded to CNS "under protest" a check for $500 "to settle this account. . . for [the] residual value on the resale."

Michelson's complaint, as amended, alleged in Count One that CNS violated the CLA's disclosure provisions for failing to explain the Rule of 78s and in Count Two that CNS's practice of calculating early termination charges using the Rule of 78s was unreasonable under the CLA. Michelson asserted no claim under the MMPA or any other state statute.

In May of 1996, Michelson moved to certify a plaintiff class of those lessees who were assessed charges for early termination, delinquency or default. Before ruling on that motion, the district court turned its attention to CNS's pending motion to dismiss, and granted the motion with respect to Count One of the second amended complaint (the disclosure count) but denied the motion with respect to Count Two (the "reasonableness" claim).

Thereafter, at a pretrial conference with the magistrate judge on October 23, 1996, CNS argued that Michelson's $500 payment operated as a settlement of his claim, which jeopardized his standing to lead the proposed class of approximately 3,000 plaintiffs. Although Michelson disputed the issue and the issue was not resolved, the magistrate judge entered an order on October 29, 1996 giving Michelson leave to join an additional proposed class representative. Consequently, Michelson's third amended complaint proposed the addition of 39 new plaintiffs. CNS opposed the amendment, arguing that because all 39 proposed plaintiffs were class members in the Missouri state court litigation, denial of the amendment was appropriate under the doctrine enunciated by the Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). CNS did not challenge the maintenance of Michelson's individual claim.

The district court held a hearing on the proposed amendment on March 10, 1997. At that time, the court expressed concern that although the New Jersey action was

5

based on the federal statute and the pending Missouri state court action was based on Missouri state law, it appeared that the question of the reasonableness of the Rule of 78s was the primary issue in both actions and the damages sought in both actions were essentially the same. Michelson sought to distinguish the actions on the grounds that statutory damages were available in the federal action whereas only compensatory and punitive damages were available in the Missouri action. He also contended that the ruling in Missouri would not be dispositive of his action. Without deciding the res judicata issue raised by CNS as one of the bases for its contention that the 39 proposed plaintiffs were inappropriate class representatives, the court commented that Michelson's individual action would remain even if the 39 proposed plaintiffs were eventually barred after completion of the Missouri action. Likewise, the court recognized that other potential members of the New Jersey class who were not parties to the Missouri action would not be barred by a Missouri judgment.

The court denied the motion to amend the complaint to add the 39 proposed plaintiffs and the motion for class certification, and stayed proceedings on Michelson's individual claim pending resolution of the Missouri action. It delivered an oral opinion, stating at the outset: "I find that the basic thrust of the determination I am about to make is controlled by Colorado River Water Conservation Dis. v. United States, 424 U.S. 800, 817 (1976)." Supp. App. at 124. After discussing Colorado River, the court concluded:

> So it seems as though most, if not all, of the applicable Colorado River factors would cause me to dismiss or stay this matter, and I do this by way of a qualitative rather than quantitative analysis. It is not a mechanical checklist, but we do it weighing these factors qualitatively. I find this matter should be dismissed under the Colorado River Doctrine, and therefore, the motion to amend the complaint is denied, and the motion for class certification is denied.
>
> With regard to what is left, we will stay Mr. Michaelson's [sic] matter pending resolution in Missouri and see what happens out there. He has the

6

> option, if he wishes, to jump ship there, to board that other steamship in Missouri, I suppose, but I am not making findings as to that.

Supp. App. at 129.

On appeal, Michelson argues that the Colorado River doctrine is inapplicable on the facts of this case, and that therefore the order entering the stay should be reversed. In addition, he argues that the denial of class certification should be reversed because it had "the effect" of erroneously staying the claims of the potential class members under Colorado River and was an abuse of discretion. We note that Michelson has not specifically listed as an issue presented on appeal the question whether the court erred in denying the motion to amend the complaint. Nevertheless, Michelson argues in his reply brief that he is also appealing the denial of his motion to amend the complaint and that that issue was preserved in his notice of appeal.

II.

A.

We turn to consider whether we have jurisdiction over any portion of the order Michelson has appealed. It is well-settled that orders granting or denying motions to add parties are not "final" within the meaning of 28 U.S.C. S 1291. In McClune v. Shamah, 593 F.2d 482 (3d Cir. 1979), this court, after noting that plaintiffs had not appealed from the district court's denial of their motion to amend the complaint to add a party, commented "nor could they [have appealed] since it is not a final order appealable under 28 U.S.C. S 1291." Id. at 486. More recently we quoted the statement from a decision of the Tenth Circuit that " `although an order refusing or permitting the filing of an amended complaint joining an additional party is a discretionary action by the trial court and subject to appellate review as part of an ultimate final judgment, the order itself is not appealable in isolation.' " Fowler v. Merry, 468 F.2d 242, 243 (10th Cir. 1972) (per curiam) (quoted in Powers v. Southland Corp., 4 F.3d 223, 232 (3d Cir. 1993)).

7

The Fowler court also stated that denial of an amendment does not "present[ ] a situation indicating allowable review under the exceptional doctrine of Cohen . . .," Fowler, 468 F.2d at 243, a view with which we also agreed. Powers, 4 F.3d at 232.

Similarly, it has been firmly established for nearly two decades that orders granting or denying class certification are not appealable before a final order is issued. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 469-71 (1978) (order denying class certification was not a final order under the `death knell' doctrine nor was it appealable as a collateral order); Georgine v. Amchem Products, Inc., 83 F.3d 610, 624 (3d Cir. 1996), aff'd, 117 S. Ct. 2231 (1997); Favia v. Indiana Univ. of Pennsylvania, 7 F.3d 332, 338 n.9 (3d Cir. 1993).

Accordingly, our jurisdiction at this juncture to review the district court's denial of Michelson's motion to amend the complaint and its denial of class certification will depend on whether the district court's stay of Michelson's individual claim can be deemed a final order.

B.

We consider then whether that portion of the district court's order staying Michelson's individual claim pending the resolution of the Missouri action was "final" within the meaning of 28 U.S.C. S 1291. In order to determine whether the stay order is final, we must look to its effect. See Aluminum Co. of America v. Beazer East, Inc., 124 F.3d 551, 557 (3d Cir. 1997); Marcus v. Township of Abington, 38 F.3d 1367, 1370 (3d Cir. 1994). The effect of a final order is typically two-fold. First, it will dispose of all claims presented to the district court and, second, it will leave "nothing further for the district court to do." Aluminum Co. of America, 124 F.3d at 557 (citing Catlin v. United States, 324 U.S. 229, 233 (1945)). See also Quackenbush v. Allstate Ins. Co., 116 S. Ct. 1712, 1718 (1996) (stating that a decision is ordinarily considered final and appealable under S 1291 only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment); Christy v. Horn, 115 F.3d 201, 203 (3d Cir. 1997). Thus,

8

"there is no final order if claims remain unresolved and their resolution is to occur in the district court." Aluminum Co. of America, 124 F.3d at 557.

The issue of whether and under what circumstances a stay order may be considered final and appealable has spawned a considerable body of case law. Of course, by definition an order that stays the proceedings for a finite period of time, would, without more, merely postpone a final disposition in the district court, and therefore would lack the essential elements of finality. Thus, in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), Justice Brennan referred to "the usual rule that a stay is not ordinarily a final decision for purposes of S 1291, since most stays do not put the plaintiff effectively out of court." Id. at 10 n.11 (internal quotations omitted). This court has had numerous occasions to iterate that principle. See Marcus, 38 F.3d at 1370 ("Stay orders normally are not appealable final orders because they merely delay proceedings in the suit."); Schall v. Joyce, 885 F.2d 101, 104 (3d Cir. 1989) (recognizing that Moses H. Cone "reaffirm[ed] the usual rule that a stay is not ordinarily a final decision for purposes of S 1291") (citations omitted).

Not all stays fall within this general rule. In Moses H. Cone, the Court reasoned that where a stay order has the practical effect of a dismissal, a reviewing court may treat it as final. Moses H. Cone, 460 U.S. at 9-10. The particular stay in that case was one entered pursuant to Colorado River, sometimes referred to as the Colorado River abstention doctrine, under which a federal court may, in exceptional circumstances, dismiss a federal suit"due to the presence of a concurrent state proceeding for reasons of wise judicial administration." Colorado River, 424 U.S. at 818.

The Moses H. Cone case arose when the contractor for a construction project for a hospital requested arbitration of its dispute with the hospital, as provided for in the contract. The hospital sought a declaratory judgment in state court that there was no right to arbitration. The contractor filed a diversity action in federal court to compel arbitration under section 4 of the Arbitration Act. The

district court stayed the federal proceedings pursuant to the Colorado River doctrine, and the contractor appealed. The Court of Appeals held it had jurisdiction over the appeal and reversed. The Supreme Court upheld the exercise of appellate jurisdiction by the Court of Appeals. After acknowledging the general rule that stays are not final orders for purposes of appeal, the Court held that the stay in that case was final and appealable because"a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue [of arbitrability] would be res judicata." Id. at 10.

The Court enunciated what has since been recognized as one of the principal exceptions to the nonappealability of a stay order: when a stay forces the plaintiff "effectively out of federal court" by requiring "all or an essential part of the federal suit to be litigated in a state forum" or"when the sole purpose and effect of the stay is precisely to surrender jurisdiction of a federal suit to a state court," the order is final and appealable. Id. at 10 n.11. Supreme Court decisions both before and after Moses H. Cone have sustained the appealability of district court orders declining to exercise jurisdiction under various abstention doctrines. See Idlewild Liquor Corp. v. Epsteen, 370 U.S. 713, 715 n.2 (1962) (per curiam) (court of appeals "properly rejected" argument that district court order effectively staying an action for the same reasons underlying Pullman abstention was not final); Quackenbush, 116 S. Ct. at 1719-20 (order remanding to state court on grounds of Burford abstention was final).

Following the decision in Moses H. Cone, this court has consistently applied the finality analysis articulated there in determining our own jurisdiction to hear appeals from orders staying federal cases in deference to actions proceeding simultaneously in state court. See , e.g., Marcus, 38 F.3d at 1370; Trent v. Dial Medical of Florida, Inc., 33 F.3d 217, 222 (3d Cir. 1994); Schall, 885 F.2d at 104-05; Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 735-36 (3d Cir. 1983). That analysis usually has entailed an inquiry into the effect of the district court's stay to ascertain whether the court has surrendered its jurisdiction

10

to a state court. This necessitates comparing the nature of the claims presented in the two actions and considering the extent to which the state court judgment will impact on the federal action. See generally, Moses H. Cone, 460 U.S. at 9-13; Marcus, 38 F.3d at 1370-72; Trent, 33 F.3d at 220-22; Schall, 885 F.2d at 104-05; Cheyney, 703 F.2d at 735-36.

Michelson makes the broader argument that all stays entered pursuant to the Colorado River doctrine are appealable final orders. Although at first blush this appears to be an expansion of finality, further consideration suggests that Michelson's contention is not without basis, although he cites no case that has articulated the rule in precisely that manner. Examination of Moses H. Cone and the cases thereafter support the view that if the stay entered by the district court meets the threshold requirements of the Colorado River doctrine, i.e. the state proceeding for which the federal case has been stayed is in fact parallel in parties and claims and will have res judicata effect on all or an important part of the subsequent federal case, then the order is appealable. The difficulty in application arises in considering the appealability of a stay when the district court has merely invoked the Colorado River doctrine to justify the stay order entered, but the circumstances of the case do not correspond with the parameters of that doctrine. In that situation, there would be no appellate jurisdiction.

Our decision in Marcus serves as an illustration of the point. In that case, a plaintiff who sued a township and local officials under 42 U.S.C. S 1983 appealed from a stay pending the resolution of a related criminal proceeding, nominally entered pursuant to the Colorado River doctrine. Marcus, 38 F.3d at 1370. In dismissing the appeal for want of jurisdiction, we stated that notwithstanding the district court's invocation of Colorado River, "[a]ppellate review is inappropriate here because the stay entered by the district court merely delays the federal litigation and does not effectively terminate it." Id. Specifically, we noted that the state court judgment would have no res judicata effect on the federal litigation and that "[o]nce the stay is lifted, the state court's disposition of the criminal proceeding will have a negligible impact on the subsequent federal adjudication." Id. at 1371. We then explained further that:

We realize, of course, that most stay orders entered upon the authority of Colorado River Water Conservation Dist. v. United States, are subject to immediate appellate review. As the Supreme Court pointed out in Moses H. Cone, the Colorado River doctrine applies only if there is parallel state court litigation involving the same parties and issues that will completely and finally resolve the issues between the parties and, accordingly, a "decision to invoke Colorado River, necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the [federal] case, whether it stays or dismisses." In other words, because of the requirement of a parallel state court proceeding, stays entered under the authority of Colorado River will normally have the effect of putting the plaintiff "effectively out of federal court" and surrendering jurisdiction to the state tribunal.

In this case, the district court cited Colorado River in support of its decision to stay the proceedings before it. But our jurisdiction does not turn on the authority cited by the district court. It turns, rather, on the effect of the order that the district court had entered. If that order has deprived the federal plaintiff of a federal adjudication to which he or she may be entitled, it is a final order under Moses H. Cone and subject to immediate appellate review. If, as here, the order only serves to delay the federal adjudication, it is notfinal and not appealable.

Marcus, 38 F.3d at 1371-72 (internal citations and footnote omitted). After Marcus then, it is clear that the justification for the stay articulated by the district court is not determinative of our appellate jurisdiction, nor could it be. Id.

The distinction between the appealability of a Colorado River stay and a stay that merely delays the federal litigation is borne out by review of other leading cases. Those which have sustained appellate jurisdiction were all cases in which the essential elements of the Colorado River doctrine were present, i.e. parallel parties and parallel claims as well as a realistic possibility that the federal

12

action would thereafter be precluded. See, e.g., Wilton v. Seven Falls Co., 115 S. Ct. 2137 (1995) (reviewing Colorado River stay where district court contemplated that state court would resolve all issues); Trent, 33 F.3d at 225 (holding that court had jurisdiction over appeal from Colorado River stay where all or essential part of plaintiff 's case would proceed in state court); National R.R. Passenger Corp. v. Providence & W.R.R., 798 F.2d 8, 10 (1st Cir. 1986) (appellate jurisdiction existed over Colorado River stay because res judicata effect of state judgment would render stay "the equivalent of a dismissal"). See generally 15A Wright, Miller & Cooper, Federal Practice and Procedure S 3914.13 (2d ed. 1992) (citing cases).

On the other hand, cases where, despite nominal reference to Colorado River by the district court, the federal plaintiff would not be precluded from proceeding with the federal claim in due course have been held unappealable. See, e.g., Marcus, 38 F.3d at 1371; cf. United States v. Section 17 Township 23 North, 40 F.3d 320, 322 (10th Cir. 1994) (action stayed in deference to state court proceeding not final in the usual sense absent threat of res judicata effect); Boushel v. Toro Co., 985 F.2d 406, 410 (8th Cir. 1993) (stay entered pending foreign litigation notfinal because the "substance of the order did not effectively end the federal litigation" and "further proceedings in the federal court" were ensured if necessary).

It is important to emphasize the limited extent to which stays are appealable. In Quackenbush, the Court characterized the result in Moses H. Cone as having been compelled by precedent that was " `limited to cases where (under Colorado River, abstention, or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum,' " 116 S. Ct. at 1719 (quoting Moses H. Cone, 460 U.S. at 10 n.11) (emphasis added). Similarly, this court stated in Trent that "[i]n Moses H. Cone, the Supreme Court held that a stay grounded in the pendency of similar litigation in state court is appealable if it `effectively deprive[s] the plaintiff of its right to a federal forum. . . .' " 33 F.3d at 221 (emphasis added).

13

Thus, the task of the appellate court when presented with what is ostensibly a Colorado River stay is to make an initial decision whether the stay may have a determinative effect on the federal suit. If it is arguable that the stay will place a plaintiff such as Michelson effectively out of federal court by forcing him or her to rely on a state court judgment, then it is appealable under the authority of Moses H. Cone.

We recognize that in one sense, the decision as to appealability of a stay may be seen as a preview of the issues that will inform the ultimate decision on the appropriateness of the stay itself. However, once the appeals court takes jurisdiction, it will have the opportunity to examine in detail all of the factors relevant to the decision that "exceptional circumstances" justified the district court in abstaining from exercising "its unflagging obligation" to hear the case. Colorado River, 424 U.S. at 817. See also Moses H. Cone, 460 U.S. at 16. The appeals court will then be in a position to decide whether the court abused its discretion in entering the stay.

Significantly, both parties to the instant appeal agree that the resolution of the Missouri action will have little or no effect on Michelson's individual claim in federal court. As Michelson concedes, "a finding in the Missouri state action here resolves nothing for the [federal] trial court. The Missouri state court's holding on Missouri State law certainly does not bind, and may not even aid the trial court here with its determination of federal law." Reply Br. at 3.

It follows that we cannot characterize the stay as equivalent to a dismissal. Because Michelson is not a party to the Missouri action, once that action is resolved and the stay is lifted, he will not be precluded from proceeding with his federal claims by principles of res judicata. Similarly, because the state court action is premised only on Missouri law, whereas Michelson's federal suit is based exclusively on the federal CLA, a determination of the reasonableness of particular fees and penalties under Missouri law will not be determinative of the similar issue in Michelson's federal suit. See Wiskup v. Liberty Buick Co., Inc., 953 F. Supp. 958, 969 (N.D. Ill. 1997) ("Given the wide variation among

14

the states regarding the permissibility of the Rule of 78s, importing a state standard into the CLA would simply create confusion."). Thus, regardless of the result in the Missouri action, the stay order will not have the type of legal or practical effect as to thrust Michelson's federal CLA claim "effectively out of court." Moses H. Cone, 460 U.S. at 10.

Indeed, it appears from the argument in the district court that the court did not expect Michelson's federal claim to be disposed of by the Missouri action unless Michelson were to opt into the Missouri class -- something Michelson has never displayed any inclination to do. The court rejected CNS's argument that the entire federal action would"fall[ ] apart" after judgment was rendered in Missouri, and reminded counsel that "[i]t doesn't fall apart" because, assuming Michelson is not deemed to have settled with CNS, Michelson's individual claim would remain. Thus, although the district court did not make its reasoning explicit, there is nothing to suggest that the court was intentionally surrendering its jurisdiction to the state court rather than merely imposing a finite delay. And certainly, there is nothing to suggest that Michelson could not return to the district court to request that the stay be lifted before the Missouri action is resolved.

Accordingly, regardless of the authority cited when the district court entered the stay, the court's order will not and clearly was not intended to foreclose Michelson from presenting any of his claims in federal court and therefore is not a final judgment on the merits. See Marcus, 38 F.3d at 1371 ("The `mere prospect of delay' does not create appellate jurisdiction where it would not otherwise exist.") (quoting Hoots v. Pennsylvania, 587 F.2d 1340, 1347 (3d Cir. 1978)).

This case illustrates the problem that an appellate court faces when considering whether it has jurisdiction over an appeal of a stay when the basis for the stay is not clearly articulated by the district court. CNS emphasizes that it never asked that Michelson's individual claim be stayed under Colorado River, and agrees with Michelson that application of that doctrine would be erroneous. Appellee's Br. at 10. It argues that the district court did not find that

15

Michelson's individual claim should be stayed under Colorado River and only relied on that doctrine in denying leave to amend the complaint. Admittedly, neither party offers a cogent basis for the stay, and the district court's oral opinion is somewhat ambiguous on this point. In light of our ultimate decision that we lack jurisdiction, we do not address that issue, although we share with our colleague Judge Garth the frustration of being "prohibited from reviewing . . . those Colorado River abstention rulings involving state and federal proceedings that are neither parallel nor identical, and which are thus erroneous." Marcus, 38 F.3d at 1374 (dissenting opinion). That frustration, however, is the price the judicial system exacts for its commitment to limiting appeals in the interest of orderly adjudication.

C.

Michelson suggests that we have appellate jurisdiction to review the stay order under the collateral order doctrine, the alternate approach to finality enunciated by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949). Under that "narrow exception" we may review an order before final judgment on the merits that "(1) finally resolves a disputed question; (2) raises an important issue distinct from the merits of the case; and (3) is effectively unreviewable on appeal from a final judgment." Christy, 115 F.3d at 203-04. See also Quackenbush, 116 S. Ct. at 1718; In re Ford Motor Co., 110 F.3d 954, 958 (3d Cir. 1997). All three elements must be satisfied. Christy, 115 F.3d at 204.

We need not address the first and third elements because it is clear that the district court's stay order does not satisfy the second element. On one hand, a stay order "that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits." Moses H. Cone, 460 U.S. at 12. Thus, where a plaintiff cannot return to federal court following the resolution of the state court action, the stay amounts to a refusal by the district court to address the merits of the federal action, and the importance and separability prong of the collateral order doctrine is satisfied. Id.; cf. Quackenbush, 116 S. Ct.

16

at 1719–20 (holding that remand order based on Burford abstention doctrine was an appealable collateral order, by analogy to treatment of Colorado River stay in Moses H. Cone ); Terra Nova, 887 F.2d at 1220 (stay entered in favor of state court proceeding satisfied "importance" element where stay had the practical effect of foreclosing litigation in federal court).

On the other hand, if the stay reflects merely the district court's imposition of a finite period of delay before the court completes its adjudication, the importance prong of the Cohen test is not satisfied. In our decision in Rolo v. General Development Corp., 949 F.2d 695 (3d Cir. 1991), a case not directly implicating the Colorado River doctrine, we analogized to the Colorado River cases and distinguished between stay orders that effectively terminate the litigation, as in Moses H. Cone, and those that merely impose delay. Id. at 701. With respect to the latter, we reasoned that "[i]t does not follow [from Moses H. Cone] that an order which does no more than establish the timetable for litigating the merits of a controversy resolves an important issue completely separate from the merits." Rolo, 949 F.2d at 701 (internal quotations omitted). Subsequently in Marcus, 38 F.3d at 1371 n.4, we held that our reasoning in Rolo was also applicable to stays entered pursuant to Colorado River.

As we detailed above, regardless of the outcome in the state litigation Michelson's individual claim in federal court will remain substantially, perhaps entirely, unaffected. Thus, because "there will be further proceedings of substance in the district court," Rolo, 949 F.2d at 701, after the Missouri action is concluded, the district court's stay order fails to satisfy the "importance" prong of the collateral order doctrine, and we may not review it as a collateral order.

III.

For the reasons set forth, we conclude that we have no jurisdiction over the order of the district court denying Michelson's motion to certify a class, denying leave to amend the complaint to add additional plaintiffs, and staying the proceedings. The fact that we find the order

17

unappealable does not mean that an indefinite stay entered for no supportable reason, in this or any other case, is insulated from appellate review. Mandamus remains an available remedy in appropriate cases. See Cheyney State College Faculty, 703 F.2d at 736; Crotty v. City of Chicago Heights, 857 F.2d 1170, 1174 n.10 (7th Cir. 1988). We express no opinion as to whether this is an appropriate case for mandamus.

For the foregoing reasons, we will dismiss the appeal.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

18